# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENNETH V. SHULTS, COLLEEN M. SHULTS, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-cv-2214 Hon. Colin S. Bruce |
| v. | ) ) | Judge Presiding |
| GEORGE H. SHELDON, DIRECTOR, in his official capacity as Director of the Illinois Department of Children and Family Services, | ) ) ) ) ) | Hon. Eric I. Long Magistrate Judge |
| Defendant. | ) | |

## DEFEENDANT'S MEMORANDUM IN SUPPORT OF HIS
## MOTION TO DISMISS

NOW COMES the Defendant, George H. Sheldon, Director, Illinois Department of Children and Family Services (hereinafter "the Department"), by his attorney, Lisa Madigan, Attorney General of the State of Illinois, and submits his memorandum in support of his Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs, foster parents Kenneth V. Shults and Colleen M. Shults, Second Amendment Foundation, Inc., and Illinois State Rifle Association, bring this action pursuant to 42 U.S.C. § 1983, alleging that Director Sheldon violated their civil rights by maintaining licensing regulations for the safe storage of guns and ammunition in foster homes. The regulation and policies at issue apply only to licensed foster homes in Illinois. As foster parents, the Shultses contract with the State of Illinois to maintain a foster home in which youth in the care and custody of the State of Illinois reside. They are free to choose at any time not to be foster parents, at which time licensing regulations for foster homes would no longer apply to them. Moreover, the licensing requirements for the safe storage of guns and ammunition in foster

homes are reasonable and do not unconstitutionally burden the Shultses' Second Amendment rights.  Therefore, Plaintiffs have not pled a claim upon which relief can be granted, and their complaint should be dismissed.

### Statutory and Regulatory Background

The Department has the legal authority to place children in substitute care apart from their parents or guardians when it is in the best interests of the children, under the Abused and Neglected Child Reporting Act, 325 ILCS 5, Adoption Act, 750 ILCS 50, Juvenile Court Act of 1987, 705 ILCS 405, and Children and Family Services Act, 20 ILCS 505; *see also* Ill. Admin. Code tit. 89, §§ 301.10, 301.40.  Children who have been taken into state custody may be placed in a licensed foster family home, defined as "a facility for child care in residences of families who receive no more than 8 children unrelated to them…" Child Care Act of 1969, 225 ILCS 10/2.17.

DCFS is charged with making rules that are necessary to carry out its statutory obligations. 20 ILCS 505/4.  "Administrative rules and regulations have the force and effect of law, and must be construed under the same standards which govern the construction of statutes." *People ex rel. Madigan v. Ill. Commerce Comm'n*, 231 Ill.2d 370 (Ill. 2008).  Department Rule 402 provides the licensing standards with which foster parents must comply. Ill. Admin. Code tit. 89, § 402.1.  (Department Rule 402, Licensing Standards for Foster Family Homes, is attached hereto in its entirety as Exhibit A).

Potential foster parents submit applications to become licensed with the Department.  Ill. Admin. Code tit. 89, § 402.4(a). Each foster family home applicant and adult member of the household is subject to a background check and fingerprinting.  Ill. Admin. Code tit. 89, § 402.4(c).  Certain criminal convictions serve as a bar to receiving a license, including homicide,

kidnapping, and sex offenses.  Ill. Admin. Code tit. 89, § 402, Appendix A.  Members of the potential foster family home between the ages of 13 to 17 years-old are subject to a Child and Neglect Tracking System (CANTS) and Child Sex Offender Registry check.  Ill. Admin. Code tit. 89, § 402.4(c).  Foster parents and other members of the home are subject to medical examinations to certify that they are free of any communicable diseases or any physical or mental conditions that would affect their ability to provide care. Ill. Admin. Code tit. 89, § 402.14.

     After an application is submitted, a licensing representative employed by the Department or a private agency conducts a licensing study of the home, which a supervisor reviews.  The supervisor approves the recommendation or denial of the license based on compliance or non-compliance with licensing standards. The written study is signed by both the performing licensing representative and the representative's supervisor.  Ill. Admin. Code tit. 89, § 402.4(d).

     Unless revoked by the Department or voluntarily relinquished by a family, a foster family home license is valid for four years.  Ill. Admin. Code tit. 89, § 402.7(a). Foster parents must submit a new licensing application when the family withdraws from the process but decides to reapply; there has been a change of name or address of the foster family home; there has been a change in status of a joint license, due to marriage, divorce or death; or a family seeks to reapply after a previously held license had been revoked or rejected.  Ill. Admin. Code tit. 89, § 402.4(e).

     The Department's rules provide detailed foster home licensing requirements that mandate how many children shall be placed in a foster family home, sleeping arrangements, nutrition and meals, religious practices, the employment of foster parents, how children are to be disciplined and other requirements. *See* Ill. Admin. Code tit. 89, §§ 402.8, 402.9, 402.11, 4021.15, 402.18, 402.21. The Department's general requirements forbid tobacco use in the foster family home,

require smoke and carbon monoxide detectors, specify how pools and hot tubs are to be maintained and require that dangerous household supplies or tools and all prescription or nonprescription drugs be kept in a safe place. Ill. Admin. Code tit. 89, §§ 402.8(e)(d)(g)(h)(m)(n). *See id.* at §§ 402.10(a) (number of meals and time span between meals); § 402.10(f) (manner in which meals are served and sanitary conditions); § 402.9(g) (linen changes); §§ 402.9(a), (b), (c) (sleeping arrangements); § 402.21(i) (withholding child's spending money for disciplinary purposes); § 402.16(b) (supervision of the child); § 402.21(c) (corporal punishment).

Beyond these rules, the Department has promulgated rules for safe storage of guns and ammunition in licensed foster homes. Ill. Admin. Code tit. 89, 402.8(i), effective August 1, 2009, states:

> Any and all firearms and ammunition shall be locked up at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures.

The Department also issues procedures which expand on the rules and provide guidance in their application. Department Procedure 402.8(i), effective September 22, 2010, Guns, Rifles and Ammunition (attached as Exhibit B), provides that:

> Guns, rifles, and ammunition shall be stored in a locked place, inaccessible to children. This may be a container, cabinet, section of a room, or entire room, which is locked and inaccessible to children. Ammunition and firearms shall be stored separately. Licensing staff shall observe the storage of these items and document the location on the CFS 590.
>
> The licensing representative shall ensure that the foster family home applicant(s)/licensee(s) sign form CFS 452-A, Acknowledgment of Compliance and, if applicable, form CFS 452-2, Foster Family Firearms Agreement.

4

> If any loaded gun is kept in the home, the licensing representative shall verify that the owner is a law enforcement officer and keeping the gun loaded is required by their law enforcement agency's policies. Secure the name and address of the law enforcement officer's agency, obtain a copy of the agency's policies, review them, and place them in the foster family home licensing record. Document on the CFS-590.

The Department requires that licensed foster homes disclose the presence of guns and ammunition in the foster homes. The Department requires the completion of a form when a foster family home does not have any firearms in the foster home. CFS 452-A, Acknowledgement of Compliance Section 402 Licensing Standards for Foster Family Homes (attached as Exhibit C). When a foster family does have firearms in the household, the Department requires completion of a different form acknowledging that ammunition is kept in locked storage, separate from any firearms, with firearms inaccessible to children. CFS 452-2, Foster Family Firearms Agreement (attached as Exhibit D).

On May 1, 2015, the Department issued Policy Guide 2015.08, "Enhanced Firearm Safety in Foster Family Homes." (Attached as Exhibit E). Policy Guide 2015.08 was created to add greater levels of safety to foster homes by requesting and recommending that "foster parents store any and all firearms outside the foster home and its property" and that firearms and ammunition in the foster home be "unloaded and secured in separate and locked storage receptacles specifically manufactured to keep firearms and ammunition secure." *Id.* The Policy Guide also requires trigger locks on all firearms and that the keys to access all firearms must be kept with the owner or stored outside the foster home, and not shared with anyone.

Policy Guide 2015.08 was issued in response to the Department of Children and Family Services's Inspector General's recommendation that trigger locks and other enhanced safe storage practices for all firearms be implemented in foster family homes. "These recommendations were made subsequent to an investigation of a foster youth who died from a

self-inflicted gunshot wound after the youth found keys to his foster parents' gun cabinet. The Inspector General also completed an in-depth literature review of youth suicide that contributes in making these recommendations." *Id.*

## Factual Background

The Shultses reside in Fairmount, Illinois. Complaint, hereinafter "Compl." ¶ 8.  They have a licensed foster home.  One youth in foster care resides in the home, along with three biological children.  Compl. ¶ 8.  The Shultses have been licensed foster parents through DCFS since 2007.  Compl. ¶¶ 8, 10.  The complaint alleges that the Shultses are allowed to possess firearms in Illinois, but "are prohibited by the IDCFS policy complained of herein from possessing loaded functional firearms in their homes so long as they currently are foster parents, or plan to be foster parents in the future." Compl. ¶ 12.  The Shultses are members of the Second Amendment Foundation and the Illinois State Rifle Association.  The stated purpose of both organizations is to protect the constitutional right to privately own and possess firearms within Illinois.  Compl. ¶¶ 14, 16.

## Argument

### I. The Applicable Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The complaint must "[set] forth facts sufficient to support a cognizable legal theory." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). The court will take well-pled allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Id.*  The court may take judicial notice of matters of public record even though they are outside the pleadings.  *Anderson v. Simon*, 217 F.3d 472, 474-475 (7th Cir. 2000).  Importantly, a plaintiff's obligation to provide the grounds for her

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A plaintiff's conclusory legal statements should not be taken into account. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

II.     **Defendant Does Not Violate The Plaintiffs' Second Amendment Constitutional Rights By Requiring Safe Storage of Firearms and Ammunition.**

Plaintiffs allege that DCFS policy and rules, "based solely on their status as foster parents," violate their right to possess and carry firearms as secured by the Second Amendment. Compl. ¶ 30. Plaintiffs are wrong. The Department's policies and rules require the safe storage of firearms and ammunition in foster homes. No court has held that foster parents' right to firearms is guaranteed by the Second Amendment.

In *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court confirmed that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. The Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualification on the commercial sale of arms." *Id.* at 626-27. The Court added that this list of "presumptively lawful regulatory measures" was illustrative, not exhaustive. *Id.* at 627 n. 26.

In *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir 2011), the Court of Appeals established a two-part framework for resolving Second Amendment issues like those present in this case. "First, the threshold inquiry . . . will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" *Id.* at 701. If the activity regulated by the challenged law is not within the scope of the Second Amendment, then "the activity is categorically

7

unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702-03. Second, if the regulated activity is within the scope of the Second Amendment, "then there must be a[n] . . . inquiry into the strength of the government's justification for restricting and regulating the exercise of Second Amendment rights." *Id.* at 703.

  **A.** **The Department's Rules for Storage of Guns and Ammunition in Foster Homes Do Not Implicate a Core Second Amendment Right.**

The Shultses contend that they have a constitutional right to be foster parents. Compl. ¶ 3. This is simply not so. No court has found that there is a constitutional right to be a foster parent. Foster parents have a voluntary contractual temporary relationship with the State. While they are foster parents with children in care placed in their homes, they are obligated to comply with state law and regulation. These laws and regulations restrict their actions in their homes. *See* Ill. Admin. Code tit. 89, § 402.1; discussion *supra* at 2-4. The relationship of a foster parent with the State is contractual, and compliance with the licensing rules is an essential component of that contractual relationship.

The Seventh Circuit Court of Appeals has determined that Illinois foster parents have no cognizable liberty interest in their relationship with the foster children in their homes. *Procopio v. Johnson,* 994 F.2d 325, 328-30 (7th Cir. 1993). Instead, a foster parent's role is that of a "'temporary weigh station on the road of a child's life,' not a family for whom a future permanent situation is guaranteed." *Procopio,* 994 F.2d at 329 (quoting *Johnson v. Burnett,* 182 Ill. App. 3d 574, 579 (Ill. App. Ct. 1989)). The Shultses have no constitutional right to be foster parents. Their status as foster parents is dependent on their compliance with the Department's rules.

The threshold inquiry is whether foster parents retain an unfettered Second Amendment right to possess firearms in a licensed foster home. They do not. The Shultses voluntarily

agreed to be foster parents in Illinois and have signed contracts to abide by the Department's rules, regulations, and policies to maintain a licensed foster home in Illinois. If they choose to no longer be foster parents, they will not be subject to any of the restrictions that they complain of. Foster parents in Illinois are independent contractors and not employees or agents of the State. *Nichol v. Stass*, 192 Ill. 2d. 233, 238 (Ill. 2000). *See also Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004); *Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 845 (1977) (noting that, unlike the natural family, which has "its origins entirely apart from the power of the State," the foster parent-child relationship "has its source in state law and contractual arrangements").

As part of their contracts with the State to be foster parents and to license their homes, foster parents give up certain rights and privileges that they would otherwise enjoy. For example, foster parents' business and employment are limited, including a requirement that any business operation on the premises be approved. Further, employment outside of the home is permitted, but a plan for supervision of the children must be approved in writing before children are placed in the foster home. Ill. Admin. Code tit. 89, § 402.11. Written consent of the parent, juvenile court, or legal custodian is required for church attendance in a faith different from the child's. §402.25. Likewise, written consent is required for extensive trips or excursions. Ill. Admin. Code tit. 89, §402.25. The use of corporal punishment is prohibited and other forms of punishment are proscribed. Ill. Admin. Code tit. 89, §402.11. Foster parents do not have a right to exercise their religious beliefs about punishment on a child in foster care. *Backlund v. Barnhart,* 778 F.2d 1386, 1389-90 (9th Cir. 1985).

It is fundamentally accepted that parties may contract away rights, even of constitutional dimension, as well as statutory rights. *Gaylor v. Vill. of Ringwood*, 363 Ill. App. 3d, 543, 549

(2d Dist. 2006)(internal citation omitted). Plaintiffs are free to choose to have the same access to firearms as other Illinois citizens by simply choosing not to be foster parents.

As the Court recognized in *Smith*, 431 U.S. at 856–58, state law defines the circumstances under which a child may be placed in foster care, prescribes the obligations of the foster parents, and provides for the removal of the child from the foster home "in [the] discretion" of the agency with custody of the child. *Id.* The agency compensates the foster parents, and reserves in its contracts the authority to decide as it sees fit whether and when a child shall be returned to his natural family or placed elsewhere. Were it not for the system of foster care that the state maintains, the relationship for which constitutional protection is asserted would not even exist. *Lofton,* 358 F.3d at 809; *cf. Smith,* 431 U.S. at 845 (noting that, unlike the natural family, which has "its origins entirely apart from the power of the State," the foster parent-child relationship "has its source in state law and contractual arrangements"); *Dupuy v. Samuels*, 397 F.3d 493, 514 (7th Cir. 2005) (plaintiffs have chosen to be licensed by the Department as foster parents, which is "a contractual role created by the State for the purpose of assisting the unfortunate victims of child abuse or neglect.").

Further, "foster parents do not enjoy the same constitutional protections that natural parents do." *Backlund*, 778 F.2d at 1389–90 (9th Cir. 1985); *see also Kyees v. Cty. Dep't of Public Welfare,* 600 F.2d 693, 698 (7th Cir. 1979); *Drummond v. Fulton County Department of Family & Children's Servs.,* 563 F.2d 1200, 1206-07 (5th Cir.1977) (en banc); *Sherrard v. Owens,* 484 F. Supp. 728, 740-41 (W.D. Mich. 1980), *aff'd,* 644 F.2d 542 (6th Cir. 1981) (per curiam).

The relationship between these foster parents and foster child is a creature of Illinois child welfare statutes. The Shultses chose to become foster parents, voluntarily applied for and

10

were granted a license to have their home registered as a foster home and, in doing so, agreed to be subject to Department rules, regulations and policies in order to protect foster children placed in their care. Given this framework, the lawful regulatory measures taken by the Department to regulate a licensed foster home are not within the scope of the Second Amendment, and there is no need to subject them to further Second Amendment review. *Ezell*, 651 F.3d at 702-03.

      The Shultses claim that their failure to abide by their agreement to keep firearms safely away from the child placed in their care will result in removal of the child. But that does not make the agreement to be foster parents involuntary or coercive. *See id.* The question whether participation as a foster parent is voluntary for failure to abide by an agreement to keep children safe has been answered in the negative: knowing that removal is a consequence of jeopardizing children's safety does not render foster parents' agreement involuntary or make the process constitutionally infirm. *See Dupuy v. Samuels,* 465 F.3d at 761-62. Moreover, the State is free to remove a foster child in care from a particular foster home at any time. As the Second Circuit recognized in *Rivera v. Marcus*, 696 F.2d 1016, 1017 (2d Cir. 1982): "Although foster parents often provide the same care, love and support expected of natural or adoptive parents, the foster relationship is frequently of shorter duration and is carefully circumscribed by a contract which typically authorizes the state to remove a child from the foster home at any time." Because plaintiffs fail to state a claim upon which relief can be granted and their complaint should be dismissed.

      **B.    The Government's Regulation of Firearms and Ammunition in Foster Homes Is Justified.**

      Even if the regulation and policies of the State that Plaintiffs complain about impinge on their core Second Amendment rights, the regulations and policies for safe storage of guns and ammunition in foster homes satisfy the standard articulated in *Ezell v. City of Chicago,* 651 F.3d

684, 708-09 (7th Cir. 2011).  There is a "strong public interest justification" for the regulation and "a close fit between [that regulation] and the actual public interest it serves."  *Id.*

Firearms, especially unsecured and loaded firearms, are dangerous when children are in the home. *See* David C. Grossman *et al.*, *Gun Storage Practices and Risk of Youth Suicide and Unintentional Firearm Injuries*, 293 JAMA 707, 711-13 (Feb. 2005), *available at* jamanetwork.com/journals/jama/fullarticle/200330.  For example, in 2013, there were 1113 gun deaths in Illinois, which include homicides, suicides and unintentional shootings.  151 children and adolescents 19 and younger were killed. *See* Ill. Council against Handgun Violence ("ICHV"), *available at* http://www.ichv.org/facts-about-gun- violence/general-facts-about-gun-violence (last visited November 16, 2016) (citing CDC National Center for Health Statistics mortality report online, 2013).  Nationwide, of all injury deaths of individuals 15 through 19 years of age in 2009, more than 1 in 4 were firearm related, and of those 20 years-old and younger, 1 in 5 were firearm related.  M. Denise Dowd *et al.,* American Academy of Pediatrics, Council on Injury, Violence, and Poison Prevention, Executive Committee, *Firearm-Related Injuries Affecting the Pediatric Population,* 130 Pediatrics, Issue 5 (Nov. 2012), *available at* http://pediatrics.aappublications.org/content/130/5/e1416.full, citing National Center for Injury Prevention and Control, U.S. Centers for Disease Control and Prevention, Web-Based Injury Statistics Query & Reporting System (WISQARS) Injury Mortality Reports, 1999–2009, for national, regional, and states (May, 2012).

There is no doubt that guns are dangerous to children and there is a strong public interest served in protecting children from gun death and injury.  Most guns involved in self-inflicted and unintentional firearm injuries originate either from the victim's home or the home of a friend or relative.  Grossman, D. et al., *Self-inflicted and Unintentional Firearm Injuries Among Children*

*and Adolescents: The Source of the Firearm,* 149 Archives of Pediatric and Adolescent Medicine, 875-878 (1999), *available at* http://jamanetwork.com/journals/jamapediatrics/fullarticle/347593. Firearms in foster homes have led to tragic consequences. *E.g. McLean v. Gordon*, 548 F.3d 613, 616-17 (8th Cir. 2008) (section 1983 and wrongful death action against state social worker after foster child shot and killed by another child in a foster home).

The close fit between the regulations and the public interest served, *Ezell, id.*, is borne out in reported studies. The practices of keeping guns locked, unloaded, storing ammunition locked, and in a separate location each has a protective effect. Grossman, *id.* at 707; M. Denise Dowd *et al., id. See also Jackson v. City and Cty. of S.F.*, 746 F.3d 953, 966 (9th Cir. 2014) (trigger-lock requirement in all homes reasonable under the Second Amendment because "firearm injuries are the third-leading cause of death in San Francisco . . . having unlocked firearms in the home increases the risk of gun-related injury, especially to children.").

To be clear, the licensing regulations do not ban firearms in foster homes. The rules and policies requiring safe storage of firearms and ammunition in licensed foster homes fit the public interest that is served in regulating foster homes. Children in foster care have a right to be secure in their placements. Children in state care and custody are removed from their parents' care in the first instance because they were abused or neglected. The state has enacted numerous safety measures to keep children safe in the foster homes they are placed in. Restricting children's ability to access firearms while placed in a foster home is in the public interest. *See, e.g., McLean*, 548 F.3d at 616-17.

It is noteworthy that the rule and policy at issue in this case are less restrictive than the trigger-lock requirement that was approved in *Jackson v. City and Cty. of S.F.* All homes in San

Francisco are affected by that regulation, *id.* at 966, whereas the regulation in this case concerns only foster homes which provide temporary care for children in the care and custody of the State.

The Shultses' voluntary, contractual-based situation is temporary; one day foster children will not be in their home and they will be free to have loaded, unsecured firearms. Yet, in the meantime, with a foster child placed in the Shultses' licensed foster home, they must continue to abide by the regulations and policies to keep the children placed in their care safe. The Shultses are free to at any time to relinquish their foster home license and not be subject to the rules and policies that they complain about.  This is not a significant burden on their Second Amendment rights.  The regulation is in the public interest and the regulation closely fits the public interest served.  The complaint should be dismissed.

**III.     The Licensing Requirements for Safe Storage of Guns and Ammunition in Foster Homes Do Not Violate Equal Protection.**

Plaintiffs' equal protection challenge fails because there is a rational basis for the licensing requirements for safe storage of guns and ammunition in foster homes.  Under the Equal Protection Clause, a court should uphold a challenged law if there is a rational basis supporting it.  Where a law is upheld under the appropriate Second Amendment analysis, the question for equal protection purposes is whether the law has a rational basis, so long as a suspect class is not involved.  *See Teixeira v. Cty. of Alameda,* 822 F.3d 1047, 1052 (9th Cir. 2016), citing *Romer v. Evans,* 517 U.S. 620, 631 (1996) ("we will uphold a legislative classification so long as it 'neither burdens a fundamental right nor targets a suspect class,' and 'bears a rational relation to some legitimate end.'"); *Kwong v. Bloomberg,* 723 F.3d 160, 170 n.19 (2d Cir. 2013); *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* 700 F.3d 185, 211–12 (5th Cir. 2012); *Hightower v. City of Boston,* 693 F.3d 61, 83 (1st Cir. 2012).

The Shultses do not comprise a suspect class. *Jones v. Ada S. McKinley Cmty. Servs.,* No. 89 C 0319, 1989 WL 152352, at *1, 6 (N.D. Ill. Nov. 28, 1989) ("[I]n light of the characteristics of classes which have received protection, discrete and insular minorities unable to utilize the political process to correct inequalities, it is absurd to assert foster parents would qualify for protection.").

This Court should uphold the challenged licensing requirement under the Equal Protection Clause because there is a rational basis for the safe storage requirements for guns and ammunition in foster homes. *See Baskin v. Bogan,* 766 F.3d 648, 654 (7th Cir. 2014). "The question is whether the challenged legislation is rationally related to a legitimate state interest." *Heller,* 509 U.S. at 320. Under this deferential standard, a legislative classification "is accorded a strong presumption of validity," *id.* at 319, and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *id.* at 320 (citation omitted). "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320-21 (citation omitted). *Lofton,* 358 F.3d at 818.

In *Baskin,* the Seventh Circuit Court of Appeals specifically highlighted "the Supreme Court's insistence that 'whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds *along suspect lines* nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could

15

provide a rational basis for the classification.'" 766 F.3d at 654 (citing *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993).

In this case, the rational basis for the safe-storage licensing policies is clear and well supported. The practice of keeping firearms locked, unloaded and storing ammunition in a locked location separate from firearms serves as a protective measure that reduces youth suicide and unintentional injury in homes with children and teenagers. Grossman et al., 293 JAMA at 711-13. *See also* M. Denise Dowd *et al., id.*

Additional support for the trigger-lock requirement is found in a study that concludes that many young children have the same trigger pull strength as women. Young children possess the physical strength to fire a gun: 25% of 3-to-4-year-olds, 70% of 5-to-6-year-olds, and 90% of 7-to-8-year-olds can fire most handguns. Naureckas, S.M. et al, *Children's and Women's Ability to Fire Handguns*, 149 Archives of Pediatric and Adolescent Medicine, 1318 (Dec. 1995). *See also* Hemenway, D., Solnick, S.J., *Children and Unintentional Firearm Death, Injury Epidemiology.* 2015: 2:26-31, available at http://injepijournal.springeropen.com/articles/10.1186/s40621-015-0057-0 (study highlights the fact that unintentional firearm death to children is a problem of children shooting children and thus the importance of keeping guns away from children, their siblings, and their friends). There is no question that there is a rational basis for the licensing requirements for safe storage of guns and ammunition in foster homes. This Court should dismiss Plaintiffs' equal protection claim.

## Conclusion

WHEREFORE, for the foregoing reasons, Defendant George H. Sheldon, Director of the Department, requests that this Honorable Court grant his motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

LISA MADIGAN
Illinois Attorney General

By: /s/Barbara L. Greenspan
Barbara L. Greenspan
James C. Stevens
Michelle G. Camp
Assistant Attorneys General
100 W. Randolph St., 11-200
Chicago, Illinois 60601
(312) 814-7087

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENNETH V. SHULTS, COLLEEN M. SHULTS, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-cv-2214 Hon. Colin S. Bruce |
| v. | ) ) | Judge Presiding |
| GEORGE H. SHELDON, DIRECTOR, in his official capacity as Director of the Illinois Department of Children and Family Services, | ) ) ) ) | Hon. Eric I. Long Magistrate Judge |
| Defendant. | ) ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2016, I will electronically file the foregoing with the Clerk of the United States District Court for the Central District of Illinois using the CM/ECF system, which will then send a notification of such filing to the following:

David G. Sigale
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road
Suite 207
Glen Ellyn, IL 60137
dsigale@sigalelaw.com

s/Barbara L. Greenspan
Barbara L. Greenspan
Assistant Attorney General
100 W. Randolph St., 11-200
Chicago, Illinois  60601
(312) 814-7087
Barbara.greenspan@illinois.gov

18